UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

AMBER L. AUSTIN,

                Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,

                Defendant.

CASE NO. 10cv5761-JRC

ORDER TO REMAND

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13. (See also Notice of Initial Assignment to a U.S. Magistrate Judge and Consent Form, ECF No. 5; Consent to Proceed Before a United States Magistrate Judge, ECF No. 11). This matter has been fully briefed. (See ECF Nos. 14, 16, 17, 18).

After considering and reviewing the record, the Court finds that the ALJ failed to evaluate properly the lay testimony. The ALJ also committed legal error in his evaluation of the medical evidence, as well as in his evaluation of plaintiff's credibility and testimony. For these reasons, this matter is reversed and remanded to the administration for further consideration.

## BACKGROUND

Plaintiff, AMBER AUSTIN, was born in 1983 and was twenty-four years old on her alleged disability onset date of July 27, 2008 (Tr. 141). Plaintiff worked as a certified nursing assistant for almost a year and a half (Tr. 159).

ORDER - 1

## PROCEDURAL HISTORY

Plaintiff applied for Social Security Disability benefits on August 13, 2008, alleging disability since July 27, 2008 (Tr. 141-47). Plaintiff's claim was denied initially and on reconsideration (Tr. 98-102). Her requested hearing was held before Administrative Law Judge Gary Suttles ("the ALJ") on March 15, 2010 (Tr. 37-95).

At her hearing, plaintiff testified that she goes to school and was attending class for one hour a day, Monday through Friday (Tr. 59). Although she was attending a second class, she withdrew from that class (id.). Plaintiff testified that she was on academic probation for missing too many classes (Tr. 66). She testified that she missed classes because she "was hurting" (id.). Plaintiff further testified that she cannot sit through her entire one-hour class and that she receives special accommodation from her teacher allowing her to "get up throughout the class if I have to" (Tr. 67). Nevertheless, she testified that she has missed ten classes because of her pain (id.).

On April 7, 2010, the ALJ issued a written decision in which he found that plaintiff had not been disabled as defined in the Social Security Act from July 27, 2008 through the date of the decision (Tr. 13-32). On August 20, 2010, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 5-7). See 20 C.F.R. § 404.981.

On October 26, 2010, plaintiff filed the underlying complaint seeking judicial review of the ALJ's written decision (ECF No. 3). In her opening brief, plaintiff presents the following issues for judicial review: (1) whether or not the ALJ evaluated properly plaintiff's testimony and credibility; (2) whether or not the ALJ evaluated properly the medical evidence, including that supplied by Dr. Neims and Dr. Slater; (3) whether or not the ALJ evaluated properly

plaintiff's pain disorder and personality disorder; (4) whether or not the ALJ evaluated properly the lay evidence provided by plaintiff's mother; (5) whether or not the ALJ evaluated properly plaintiff's residual functional capacity ("RFC"); (6) whether or not the ALJ evaluated properly the testimony by the vocational expert ("VE"); and (7) whether or not this case should be remanded for a direct award of benefits (Plaintiff's Opening Brief, ECF No. 14, pp. 10-11).

## STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999); see also Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering the plaintiff's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing* Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Magallanes v. Bowen, 881 F.2d 747,

750 (9th Cir. 1989) (*quoting* Davis v. Heckler, 868 F.2d 323, 325-26 (9th Cir. 1989)); see also Richardson v. Perales, 402 U.S. 389, 401 (1971). The court "'must independently determine whether the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" See Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing* Moore v. Comm'r of the Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

However, "regardless whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for h[is] decision and [the courts] confine our review to the reasons supplied by the ALJ." Steele v. Barnhart, 290 F.3d 936, 941(7th Cir. 2002) (*citing* SEC v. Chenery Corp., 318 U.S. 80, 93-95 (1943) (other citations omitted)); see also Griemsmann v. Astrue, 147 Soc. Sec. Rep. Service 286, 2009 U.S. Dist. LEXIS 124952 at *9, (W.D. Wash. 2009). For example, "the ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony." Stout v. Commissioner of Soc. Sec., 454 F.3d 1050, 1054 (9th Cir. 2006) (*citing* Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993)).

## DISCUSSION

1. <u>The ALJ failed to evaluate properly plaintiff's testimony and credibility</u>

The ALJ's credibility determinations "must be supported by specific, cogent reasons." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (citation omitted). If an ALJ discredits a claimant's subjective symptom testimony, the ALJ must articulate specific reasons for doing so. Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006). In evaluating a claimant's credibility, the ALJ cannot rely on general findings, but "'must specifically identify what testimony is credible and what evidence undermines the claimant's complaints.'" Id. at 972 (*quoting* Morgan v.

Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness and inconsistencies in testimony, and may also consider a claimant's daily activities, and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." Smolen, 80 F.3d at 1284.

The determination of whether or not to accept a claimant's testimony regarding subjective symptoms requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; Smolen, 80 F.3d at 1281 (*citing* Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)). First, the ALJ must determine whether or not there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); Smolen, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms "based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." Bunnell v. Sullivan, 947 F.2d 341, 343, 346-47 (9th Cir. 1991) (*en banc*) (*citing* Cotton, 799 F.2d at 1407). Absent affirmative evidence that the claimant is malingering, the ALJ must provide specific "clear and convincing" reasons for rejecting the claimant's testimony. Smolen, 80 F.3d at 1283-84; Reddick, 157 F.3d at 722.

Regarding activities of daily living, the Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities . . . . does not in any way detract from her credibility as to her overall disability." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007 (*quoting* Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001)). The Ninth Circuit specified "the two grounds for using daily activities to form the basis of an adverse credibility determination:" (1) whether or not they contradict the claimant's other testimony and (2) whether

or not the activities of daily living meet "the threshold for transferable work skills." Orn, supra, 495 F.3d at 639 (*citing* Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)). As stated by the Ninth Circuit, the ALJ "must make 'specific findings relating to the daily activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination. Orn, 495 F.3d at 639 (*quoting* Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005)).

Although the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms" (Tr. 21) and although there was no evidence of malingering (Tr. 27, 424), the ALJ here discredited plaintiff's testimony even though he did not identify any specific inconsistency in plaintiff's testimony (Tr. 26). This was legal error. See Greger, supra, 464 F.3d at 972.

For example, the ALJ noted generally that an ALJ "may properly consider the objective medical evidence in testing credibility and finding the subjective complaints exaggerated" (Tr. 26). The ALJ also noted generally that "the claimant's actual activities of daily living are greater than her alleged functional limitations" (id.). But, the ALJ failed to specify which activities of daily living contradicted which particular testimony of plaintiff regarding her alleged functional limitations. Although the ALJ did not "specifically identify what testimony is credible," as required in the Ninth Circuit, the ALJ appears to rely heavily on the fact that plaintiff attended school without mentioning that she testified that she attended class for one hour a day and has been on academic probation (Tr. 59, 66). See Greger, supra, 464 F.3d at 972. In addition, the ALJ did not make any specific finding that plaintiff's daily activities were transferable to a work setting.

Although there are "two grounds for using daily activities to form the basis of an adverse credibility determination:" (1) whether or not they contradict the claimant's other testimony and (2) whether or not the activities of daily living meet "the threshold for transferable work skills," the ALJ here discredited plaintiff's credibility without specifying a single contradiction in her testimony and without explicitly making any finding regarding transferability to a work setting. Orn, supra, 495 F.3d at 639. Therefore, the ALJ here committed legal error. See id.

The ALJ also included the following in the written decision:

> The claimant further testified that she had been depressed for 16 years. Although she had only started mental health treatment in August 2008, the claimant testified that she had stopped her mental medication the previous month. The claimant's lack of medical treatment or non-compliance may be considered in the evaluating (sic) the claimant's impairments and making the decision.

(Tr. 21).

Although it is often the case that a claimant's failure to comply with prescribed treatment calls into question the severity of the claimant's symptoms, this generally is because such failure suggests that the claimant willfully is failing to submit to medical treatment because he or she wishes to remain disabled and receive benefits or because he or she is not suffering from that severe of an impairment if not doing everything possible to remedy it. See 20 C.F.R. § 404.1530 ("If you do not follow the prescribed treatment without a good reason, we will not find you disabled"); see also SSR 96-7 1996 SSR LEXIS 4, at *21-*22. However, when a mental illness is involved, assuming that a failure to comply with prescribed treatment suggests a *willful* failure to comply with prescribed treatment can be illogical. This is in part because a person suffering from a mental illness may not realize that she needs her treatment or she may not realize that her "condition reflects a potentially serious mental illness." See Van Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996)). "'[I]t is a questionable practice to chastise one with a mental

ORDER - 7

impairment for the exercise of poor judgment in seeking rehabilitation.'" Id. (*quoting* with approval, Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir. 1989)).

When a person suffers from a mental illness, especially severe ones such as the major depressive disorder and anxiety disorder suffered by plaintiff here (see Tr. 76), and the mentally ill person does not have the requisite insight into her condition, or does not have the memory and focus to have the ability to take a medication three times a day, this fact actually can indicate a greater severity of mental incapacity. See Van Nguyen, supra, 100 F.3d at 1465; see also Blankenship, supra, 874 F.2d at 1124. In addition, according to Social Security Ruling ("SSR") 96-7, "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7p, 1996 SSR LEXIS 4, at *22.

The ALJ found that plaintiff suffered from the severe impairments of major depressive disorder and anxiety disorder (see Tr. 76), yet did not appear to take these particular diagnoses into consideration when relying on plaintiff's "lack of treatment" for her mental health impairments (Tr. 21). In addition, plaintiff testified that she stopped taking her medication because she was not able to afford it (Tr. 53-54). The ALJ did not appear to take into consideration plaintiff's inability to afford her medication when considering the factor of non-compliance with medical treatment (Tr. 21). This was legal error.

Based on a review of the relevant record and for the reasons stated above, the Court concludes that the ALJ failed to provide "clear and convincing" reasons for the decision not to credit fully plaintiff's testimony and credibility. See Smolen, 80 F.3d at 1283-84. Therefore, the

Commissioner's denial of social Security benefits should be set aside. See Bayliss, 427 F.3d at 1214 n.1.

2. <u>The ALJ failed to evaluate properly all of the medical evidence, including that supplied by examining pshychologist, Mr. Daniel M. Neims, Psy. D.</u>

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (*citing* Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991); Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990)). Even if a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Lester, supra, 81 F.3d at 830-31 (*citing* Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995)).

In addition, the ALJ must explain why his own interpretations, rather than those of the doctors, are correct. Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (*citing* Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988)). However, the ALJ "need not discuss *all* evidence presented." Vincent on Behalf of Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (per curiam). The ALJ must only explain why "significant probative evidence has been rejected." Id. (*quoting* Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981)).

In general, more weight is given to a treating medical source's opinion than to the opinions of those who do not treat the claimant. Lester, supra, 81 F.3d at 830 (*citing* Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987)). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, supra, 81 F.3d at 830 (citations omitted); see also 20 C.F.R. § 404.1527(d). A non-examining physician's or psychologist's opinion may not constitute substantial evidence by itself sufficient to justify the

ORDER - 9

rejection of an opinion by an examining physician or psychologist. Lester, supra, 81 F.3d at 831 (citations omitted). However, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." Tonapetyan, supra, 242 F.3d at 1149 (*citing* Magallanes, supra, 881 F.2d at 752). "In order to discount the opinion of an examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must set forth specific, *legitimate* reasons that are supported by substantial evidence in the record." Van Nguyen, 100 F.3d at 1466 (*citing* Lester, supra, 81 F.3d at 831).

      a.   Dr. Daniel M. Neims, Psy. D.

Dr. Daniel M. Neims, Psy. D. ("Dr. Neims") examined plaintiff and conducted a mental status examination (Tr. 662-674). The ALJ reviewed the opinion of Dr. Neims, including his opinion that plaintiff "had moderate limitations in making simple work –related decisions, completing a normal workday and workweek without interruptions from psychologically-based symptoms, interacting with the general public, asking simple question or requesting assistance, and in getting along with co-workers or peers without distracting them" (Tr. 14, 673-74). The ALJ also noted Dr. Neims' opinion that plaintiff "had a marked limitation in accepting instructions and responding to criticism from supervisors" (Tr. 14, 674).

The ALJ gave little weight to the medical opinion of Dr. Neims (id.). In doing so, the ALJ noted Dr. Neims' references to plaintiff's part-time attendance at school, the fact that plaintiff had a driver's license and a working vehicle, and that she was capable of shopping for food and necessities, as well as preparing simple food and doing chores such as laundry (id.). The ALJ also noted specific results from the mental status examination conducted by Dr. Neims, such as that plaintiff successfully spelled the word "world" forwards and backwards and that she could recall 3/3 items following no delay, a five-minute delay and a 30-minute delay (id.) The

ALJ also noted that plaintiff could identify the U.S. President and the Washington Governor, but could not identify the Vice President of the United States (id.). Finally, the ALJ noted that plaintiff was able to perform serial 3 and serial 7 subtraction mathematics without errors, but at a slow pace (id.). The ALJ interpreted plaintiff's mental status examination results as not supportive of Dr. Neims' medical opinions regarding plaintiff's limitations and concluded that her daily activities revealed that she had the ability "to interact with others and sustain a normal work day routine with limited public/employee contact" (id.).

First, the ALJ did not make any specific finding that any of plaintiff's activities of daily living were transferable to a work setting and did not specifically identify how any specific activity of daily living or the sum of her activities contradicted any particular opinion by Dr. Neims. For example, the fact that plaintiff was registered for 10 hours of coursework, possessed a car, and was able to shop for food, do simple chores, conduct very basic mathematics and complete simple tasks of memory does not demonstrate any ability to respond to criticism from supervisors. Dr. Neims opined that plaintiff had a marked limitation in this area and the ALJ's suggestion that these listed activities of plaintiff demonstrated that this opinion of Dr. Neims was not supportable is not a legitimate reason to discount Dr. Neims' opinions regarding plaintiff's functional limitations.

In addition, the ALJ conducted his own assessment of the results of plaintiff's mental status examination, concluding that they did not support Dr. Neims' medical opinions regarding plaintiff's functional limitations (Tr. 29). The Court notes that the mental status examination generally is conducted by medical professionals skilled and experienced in psychology and mental health. Although "anyone can have a conversation with a patient, [] appropriate knowledge, vocabulary and skills can elevate the clinician's 'conversation' to a 'mental status

examination'." Paula T. Trzepacz and Robert W. Baker, The Psychiatric Mental Status Examination 3 (Oxford University Press 1993). A mental health professional is trained to observe patients for signs of their mental health not rendered obvious by the patient's subjective reports, in part because the patient's self-reported history is "biased by their understanding, experiences, intellect and personality" (id. at 4), and, in part, because it is not uncommon for a person suffering from a mental illness to be unaware that her "condition reflects a potentially serious mental illness." See Van Nguyen, supra, 100 F.3d at 1465.

Here, trained psychologist Dr. Neims conducted a mental status examination and opined, among other things, that plaintiff had a marked limitation in her ability to respond to criticism from supervisors. The ALJ here noted specific results from plaintiff's mental status examination and gave a different opinion regarding the meaning of her results. When an ALJ seeks to discredit a medical opinion, he must explain why his own interpretations, rather than those of the doctors, are correct. Reddick, supra, 157 F.3d at 725. The ALJ here failed to do so.

The Court also notes that Dr. Neims diagnosed plaintiff with borderline personality disorder with avoidant traits, among other impairments (Tr. 668). Although the ALJ stated that there was a history of borderline personality disorder, he failed to mention that Dr. Neims diagnosed plaintiff as having this disorder at the time of his evaluation (Tr. 19). This significant probative evidence regarding plaintiff's personality disorder was not evaluated properly by the ALJ. See Vincent, supra, 739 F.2d at 1394-95.

Based on a review of the relevant record, the Court concludes that the ALJ here did not set forth "specific, *legitimate* reasons that are supported by substantial evidence in the record" for his findings regarding the medical opinions of Dr. Neims. See Van Nguyen, 100 F.3d at 1466 (emphasis in original).

    b. <u>The ALJ properly considered the medical opinion of reviewing psychologist, Mr.</u>
      <u>Charles Slater, Psy. D.</u>

  Dr. Charles Slater, Psy. D. ("Dr. Slater") did not examine plaintiff, but provided consultative medical testimony as a medical expert (Tr. 74-90). Dr. Slater testified regarding his familiarity with the Social Security disability process and his seven to ten years testifying while working for the Social Security Administration (Tr. 74-75). He testified regarding his review of plaintiff's medical and mental health files (Tr. 75-76). Dr. Slater directly questioned plaintiff at the hearing (Tr. 76-80). He testified as to multiple mental health diagnoses of plaintiff, all of which, he opined, stem primarily from her physical issues, including major depressive disorder, recurrent; psychological pain issues; and post-traumatic stress disorder, chronic ("PTSD") (<u>id.</u>). Dr. Slater opined that plaintiff met or medically equaled a listed impairment pursuant to Appendix One. <u>See</u> 20 C.F.R. pt. 404, subpt. P, App. 1 ("the listings"). Dr. Slater also opined that plaintiff's mental impairments caused plaintiff functional limitations (Tr. 81-83).

  The ALJ did not credit Dr. Slater's opinion regarding whether or not plaintiff met or medically equaled a listing under Appendix One (Tr. 30). The ALJ noted that Dr. Slater testified that plaintiff suffered mild to moderate and moderate functional limitations regarding activities of daily living, relevant to the B criteria of the listings (<u>id.</u>). The ALJ noted that such findings were inconsistent with Dr. Slater's opinion that plaintiff met or medically equaled a listing (<u>id.</u>)

  The ALJ also gave "little weight" to the rest of Dr. Slater's opinions, including those about plaintiff's functional limitations by finding that Dr. Slater's testimony "is unsupported by objective clinical findings, the claimant's actual rather extensive daily activities, and is inconsistent with the evidence considered as a whole" (Tr. 30). The ALJ supported this finding with references to specific evidence in plaintiff's file. The ALJ noted plaintiff's attendance at

school, noting "patterns of part time attendance" (id.). The ALJ noted that plaintiff began school in 2003 and was working towards a RN degree (id.). The ALJ referenced plaintiff's expectation that she will complete her nursing degree in 2012 (id.). The ALJ noted that at one point in time, plaintiff was enrolled in 10 credit hours of coursework (3/4 time) (id.). He also noted that she graduated from high school (id.).

The ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." Sousa v. Callahan, 143 F.3d 1240, 1244 (9th Cir. 1998) (citations omitted). Based on a review of the relevant record, the Court concludes that the ALJ here evaluated the opinion of Dr. Slater properly.

3. <u>The ALJ failed to evaluate properly the lay evidence provided by plaintiff's mother</u>

Plaintiff's mother, Ms. Cheyrl A. Wojtowicz, ("Ms. Wojtowicz") provided a statement regarding plaintiff's impairments and her functional limitations (Tr. 192-99). She reported that although plaintiff makes meals and does her own housework, she "sits or lays down a lot between tasks to help prevent and relieve any pain or stress" and mostly prepares meals that are easy and quick to prepare, such as sandwiches and frozen dinners (Tr. 192, 194). Ms. Wojtowicz also reported that plaintiff is up all night if she fails to take medication and that she generally does not sleep very well (Tr. 193). She wrote that plaintiff has problems dressing due to her shoulder injury, cannot bend over and does not shave her legs because of her lower back injury (id.). Ms. Wojtowicz also reported that plaintiff has a hard time bending down to put on socks and shoes (id.).

Ms. Wojtowicz reported that plaintiff must take breaks about every 10-15 minutes when she is doing her chores and that she needs help with heavy lifting (Tr. 194). She reported that plaintiff can do house or yard work, but does such work "very slowly" (Tr. 195). Ms. Wojtowicz

reported that plaintiff constantly has to adjust between sitting and standing (Tr. 196). Regarding plaintiff's mood, Ms. Wojtowicz stated that "when the pain gets bad, the mood gets mad" (Tr. 197).

When reporting on her daughter's abilities specifically, Ms. Wojtowicz indicated that when plaintiff squats down, she gets stuck and needs help (Tr. 197). She indicated that plaintiff can only stand for five minutes at a time (id.). Ms. Wojtowicz further indicated that plaintiff has difficulty reaching, bending and kneeling, and that plaintiff can only walk at a regular pace for about 20 minutes (id.). She stated that plaintiff has to keep repositioning herself every few minutes when sitting down (id.). Ms. Wojtowicz indicated that plaintiff has difficulties with memory, concentration and completing tasks, and that she tends to space out (id.).

Ms. Wojtowicz reported that plaintiff is not able to get along with co-workers and that plaintiff was fired from her job at Olympics West due to her problems getting along with others (Tr. 198). Ms. Wojtowicz indicated that plaintiff does not handle stress well and that she gets irritable when she suffers changes in routine (id.).

Pursuant to the relevant federal regulations, in addition to "acceptable medical sources," that is, sources "who can provide evidence to establish an impairment," see 20 C.F.R. § 404.1513 (a), there are "other sources," such as friends and family members, who are defined as "other non-medical sources," see 20 C.F.R. § 404.1513 (d)(4). See also Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1223-24 (9th Cir. 2010) (*citing* 20 C.F.R. § 404.1513(a), (d)). An ALJ may disregard opinion evidence provided by "other sources," characterized by the Ninth Circuit as lay testimony, "if the ALJ 'gives reasons germane to each witness for doing so." Turner, supra, 613 F.3d at 1224 (*citing* Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001)); see also Van Nguyen, 100 F.3d at 1467. This is because "[i]n determining whether a claimant is disabled, an

ALJ must consider lay witness testimony concerning a claimant's ability to work." Stout, 454 F.3d at 1053 (*citing* Dodrill, 12 F.3d at 919).

Recently, the Ninth Circuit characterized lay witness testimony as "competent evidence," again concluding that in order for such evidence to be disregarded, "the ALJ must provide 'reasons that are germane to each witness.'" Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (*quoting* Van Nguyen, 100 F.3d at 1467).

Here, the ALJ failed to mention the lay evidence provided by plaintiff's mother. Although defendant advises the Court as to which "inference" the Court should credit regarding the lay testimony (ECF No. 16, p. 17), the Court cannot "affirm the decision of an agency on a ground that the agency did not invoke in making its decision." Stout, 454 F.3d at 1054 (*quoting* Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001) (*citing* Chenery Corp. 332 U.S. at 196)). Although particular opinions provided by third parties that are inconsistent with particular medical test results or medical opinions may be rejected, here, the ALJ did not make any particular findings as to a single specific inconsistency. See Bayliss, 427 F.3d at 1218. In addition, the Ninth Circuit on multiple occasions has concluded that in order for lay evidence to be disregarded, "the ALJ must provide 'reasons that are germane to each witness.'" See, e.g., Bruce, 557 F.3d at 1115; Stout, 454 F.3d at 1053; Van Nguyen, 100 F.3d at 1467.

The Court concludes that the ALJ committed legal error by failing to consider the lay testimony and by failing to give any reason to reject it. See Bruce, 557 F.3d at 1115; Stout, 454 F.3d at 1053; Van Nguyen, 100 F.3d at 1467.

Although the administration is correct that plaintiff bears the burden to show that error was not harmless when reviewing lay testimony, the administration mischaracterizes what standard must be met here in order to carry this burden. See Defendant's Response, ECF No. 16,

p. 17, ll. 21-22. Defendant argues that defendant's interpretation of the evidence in this case "provides *a basis to find* that no reasonable ALJ *looking at the same evidence* would have reached a different disability conclusion" (id. (*citing* Stout, 454 F.3d at 1055) (emphases added). However, in Stout, the Ninth Circuit reviewed the harmless error standard across multiple Ninth Circuit cases, and observed that "in not one of these cases did we conclude, as the Commissioner requests we do here, that an ALJ's silent disregard of lay testimony about how an impairment limits a claimant's ability to work was harmless." Stout, 454 F.3d at 1055-56 (citation omitted). As the court noted, "we, along with our sister circuits, have consistently reversed the Commissioner's decisions for failure to comment on such competent [lay] testimony." Id. at 1056 (citations to 9th Circuit, 7th Circuit, 11th Circuit, 10th Circuit and 3rd Circuit omitted). After completing its review of the relevant cases on point, the Ninth Circuit concluded that "[i]n light of these cases, we hold that where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can *confidently conclude* that no reasonable ALJ, *when fully crediting the testimony*, could have reached a different disability determination." Stout, 454 F.3d at 1056 (reviewing cases) (emphases added).

This Court has noted before that the administration has misstated to the Court the "harmless error" standard for lay testimony in social security cases. See Crowell v. Astrue, Case No. 10-cv-5516, Report and Recommendation on Plaintiff's Complaint, ECF No. 23, pp. 5-6; Defendant's Response, ECF No. 18, p. 11, ll. 6-8; see also Braun v. Astrue, Case No. 10-cv-5214-RBL, Defendant's Response, ECF No. 16, p. 17, ll. 3-5. The Court also notes that in a previous case in which this Court adopted reasoning similar to that proposed by defendant here, this Court's order was reversed by the Ninth Circuit. See Peterson v. Barnhart, Case No. 04-

5183-RBL, Report and Recommendation, ECF No. 17, pp. 17-18 (*citing* Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001); Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982)); Order Adopting Report and Recommendation, ECF No. 21, *rev'd* Peterson v. Barnhart, 213 Fed. Appx. 600, 603-04, 605, 2006 U.S. App. LEXIS 31627 (9th Cir. 2006) (per curiam). Following defendant's rationale here likely also would be reversible error. See Peterson, 213 Fed. Apppx. at 603-04, 605; see also Bruce, 557 F.3d at 1115; Stout, 454 F.3d at 1053; Van Nguyen, 100 F.3d at 1467. The administration should note the proper standard in future cases and refrain from mischaracterizing the "harmless error" standard to this Court.

Because Ms. Wojtowicz indicated in her lay statement that plaintiff suffers many difficulties and functional impairments that affect plaintiff's ability to work, many of which were not credited in the residual functional capacity ("RFC") by the ALJ here, the Court cannot conclude with confidence that no reasonable ALJ when fully crediting the testimony could have reached a different disability determination. See Stout, 454 F.3d at 1056. Therefore, the ALJ committed harmful legal error and this matter must be reversed and remanded to the administration for further consideration. See id.

4. The ALJ failed to evaluate properly plaintiff's residual functional capacity ("RFC")

Based on a review of the relevant record and based on the ALJ's errors already discussed, the Court finds that the ALJ's finding regarding plaintiff's residual functional capacity was not based on substantial evidence in the record as a whole. Therefore, the ALJ assigned to this matter following remand must evaluate anew plaintiff's residual functional capacity. Similarly, the ALJ assigned to this matter following remand must, if necessary based on the five-step sequential disability evaluation process, obtain new vocational expert testimony.

5. <u>This case should not be remanded for a direct award of benefits</u>

The Ninth Circuit has put forth a "test for determining when evidence should be credited and an immediate award of benefits directed." <u>Harman v. Apfel</u>, 211 F.3d 1172, 1178, 2000 U.S. App. LEXIS 38646 at **17 (9th Cir. 2000). It is appropriate where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

<u>Harman</u>, 211 F.3d at 1178 (*quoting* <u>Smolen</u>, 80 F.3d at 1292).

Here, outstanding issues must be resolved. <u>See</u> <u>Smolen</u>, 80 F.3d at 1292. Although the ALJ failed to provide legally sufficient reasons for rejecting some of the medical evidence in this matter and failed to consider properly plaintiff's testimony as well as the lay testimony, the medical evidence in this matter contains conflicts.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. <u>Reddick</u>, 157 F.3d at 722; <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1043 (9th Cir. 1995). If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. <u>Sample v. Schweiker</u>, 694 F.2d 639, 642 (9th Cir. 1999) (*quoting* <u>Waters v. Gardner</u>, 452 F.2d 855, 858 n.7 (9th Cir. 1971)); <u>see also</u> <u>Calhoun v. Bailar</u>, 626 F.2d 145, 150 (9th Cir. 1980).

Therefore, remand is appropriate to allow the administration the opportunity to consider properly all of the lay and medical evidence as a whole and to incorporate the properly considered lay and medical evidence into the consideration of plaintiff's credibility and residual functional capacity. <u>See</u> <u>Sample</u>, 694 F.2d at 642.

## CONCLUSION

The ALJ failed to consider the lay testimony and failed to give any reason to reject it. Because the Court cannot conclude with confidence that no reasonable ALJ when fully crediting the testimony could have reached a different disability determination, this legal error was harmful.

The ALJ also erred in his assessment of plaintiff's credibility and in his assessment of some of the medical opinion evidence. Because of the specific errors by the ALJ in this case, the ALJ assigned to this case following remand should conduct a new hearing, review the entire record anew and issue a new decision.

Based on these reasons and the relevant record, this matter is **REVERSED** and **REMANDED** to the administration for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

Dated this 27th day of July, 2011.

J. Richard Creatura
United States Magistrate Judge